NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2954
_____

ADEWALE BABATOPE IDOWU,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A079-710-402)
Immigration Judge: Margaret R. Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 28, 2013

Before: RENDELL, FISHER and GARTH, Circuit Judges

(Opinion filed: January 30, 2013)
_____

OPINION OF THE COURT
_____

PER CURIAM

Adewale Babatope Idowu ("Idowu") petitions for review of the Board of

Immigration Appeals' final order of removal. For the reasons that follow, we will deny

the petition for review.

Idowu, a native and citizen of Nigeria, was admitted to the United States on a visitor's visa in January, 2000 and overstayed. In July, 2004, the Department of Homeland Security charged in a Notice to Appear that Idowu was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having remained for a time longer than permitted. Idowu had an approved Form I-360 petition, which he had filed as a Violence Against Women Act ("VAWA") self-petitioning spouse of an abusive lawful permanent resident, see 8 U.S.C. § 1154(a)(1)(A)(iii)(I); 8 C.F.R. § 204.1(a)(3).[1] Therefore, as relief from removal, he applied for adjustment of status under INA § 245(a), 8 U.S.C. § 1255(a).

In March, 2007, and thus while he was in removal proceedings, Idowu was convicted in the New Jersey Superior Court of, among other crimes, eluding in the second degree, in violation of N.J. Stat. Ann. § 2C:29-2(b); and third-degree aggravated assault-serious bodily injury, in violation of N.J. Stat. Ann. § 2C:12-1(b)(7). When Idowu next appeared in Immigration Court, the Immigration Judge determined that he was inadmissible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), because he had been convicted of crimes involving moral turpitude, that is, eluding in the second degree and third-degree aggravated assault-bodily injury. Thus, Idowu was ineligible to adjust his status unless he qualified for a waiver.

Idowu applied for a waiver of inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h), in conjunction with his application for adjustment of status. He presented testimony and documentary evidence in support of these applications, including

---

[1] The VAWA applies equally to victims of either sex.

testimony that his second wife had abused him. He also testified that, before he was incarcerated, he lived with his fiancée and mother of his young child, Dawn Hoyte. At the time of his hearing in January, 2012, Idowu had not spoken to Ms. Hoyte since July, 2011.

On February 8, 2012, the IJ issued a written decision finding Idowu removable for overstaying his visa. The IJ found that Idowu's convictions for second degree eluding and third-degree aggravated assault-bodily injury were crimes involving moral turpitude, making him inadmissible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ then declined to waive Idowu's inadmissibility. The IJ noted that a favorable exercise of discretion is not warranted in the case of an alien who has been convicted of "violent or dangerous crimes," unless the alien can show exceptional and extremely unusual hardship, 8 C.F.R. § 1212.7(d). The IJ concluded that eluding in the second degree is categorically a crime of violence under 18 U.S.C. § 16(b), because it is a felony that has as an element a risk of death or injury to a person. By analogy it thus is a violent or dangerous crime under the regulation. The IJ found alternatively that the eluding offense was a violent or dangerous crime when considering the nature and specific circumstances of Idowu's offense, which the IJ described in detail based on the evidence submitted by DHS. Idowu thus would have to show exceptional and extremely unusual hardship to obtain a waiver, and he had not; his close family ties in the United States were unexceptional and did not suffice to meet the standard. The IJ ordered that Idowu be removed to Nigeria.

Idowu appealed to the Board of Immigration Appeals, challenging the IJ's "crimes involving moral turpitude" and "violent or dangerous crimes" determinations. On June 18, 2012, the Board dismissed Idowu's appeal. The Board affirmed the IJ's conclusion that Idowu failed to establish eligibility for a section 212(h) waiver of inadmissibility, because his eluding conviction categorically qualified as a crime of violence under 18 U.S.C. § 16(b), and thus also qualified as a violent or dangerous crime under 8 C.F.R. § 1212.7(d). Specifically, the Board held that eluding in the second degree is a felony punishable by more than one year in prison and a crime of violence under 18 U.S.C. § 16(b), because it involves a substantial risk of the use of force upon persons. Second-degree eluding thus likely qualified as a violent or dangerous crime under 8 C.F.R. § 1212.7(d). Alternatively, in Idowu's case, it plainly involved a violent or dangerous crime because Idowu, as found by the IJ, was involved in a long chase with the police, he rear-ended two vehicles that were stopped at a traffic sign, and he tried to hit the pursuing police officers with his own car. Idowu was thus required to satisfy the heightened "exceptional and extremely unusual hardship" standard set forth in 8 C.F.R. § 1212.7(d), just as the IJ had concluded. The "exceptional and extremely unusual hardship" issue was waived, however, because Idowu had not challenged it on appeal. The Board further held that Idowu had been provided with a full and fair hearing.

Idowu petitions for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a), (b)(1). We previously denied Idowu's motion for a stay of removal and for immigration bail.

4

We will deny the petition for review. Where the Board affirms the IJ and adds analysis of its own, we review both the IJ's and the Board's decisions. See Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 250 (3d Cir. 2009). We review the Board's legal determinations de novo, subject to the principles of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). Here, the Board's application of the standard set forth in 8 C.F.R. § 1212.7(d) is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" Kaplun v. Att'y Gen. of U.S., 602 F.3d 260, 265 (3d Cir. 2010) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)). We are bound by the agency's findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B).

Section 245(a) of the INA, 8 U.S.C. § 1255(a), provides that the Attorney General, in his discretion, may adjust the status of a VAWA self-petitioner with an approved petition if he is eligible to receive an immigrant visa, there is a visa immediately available to him, he has applied for adjustment of status, and he is admissible to the United States for permanent residence. Certain grounds of inadmissibility may be waived under INA § 212(h); for example, the Attorney General has discretion to waive inadmissibility for a crime involving moral turpitude, INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). The Attorney General will not favorably exercise discretion in a waiver case where it involves a violent or dangerous crime "except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an

5

alien clearly demonstrates that the denial of the application for adjustment of status …

would result in exceptional and extremely unusual hardship." 8 C.F.R. § 1212.7(d).

The Immigration Judge properly determined that Idowu's second-degree eluding

conviction, in violation of N.J. Stat. Ann. § 2C:29-2(b), and his third-degree aggravated

assault-bodily injury conviction, in violation of N.J. Stat. Ann. § 2C:12-1(b)(7), are

crimes involving moral turpitude. An alien who is convicted of committing acts which

constitute essential elements of a crime involving moral turpitude is inadmissible. INA §

212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I).[2] "[T]he hallmark of moral turpitude is

a reprehensible act committed with an appreciable level of consciousness or

deliberation." Partyka v. Att'y Gen. of U.S., 417 F.3d 408, 414 (3d Cir. 2005). "[I]n

addition to intentional crimes, serious crimes committed recklessly – that is, with a

conscious disregard of a substantial and unjustifiable risk that serious injury or death

would follow – can be found to involve moral turpitude." Mehboob v. Att'y Gen. of

U.S., 549 F.3d 272, 276 (3d Cir. 2008) (internal quotation marks removed). In

determining whether a state law conviction constitutes a crime involving moral turpitude,

we apply a categorical approach. Partyka, 417 F.3d at 411.

---

[2] The Board found it unnecessary to reach the threshold question of whether Idowu is ineligible for adjustment of status because he is inadmissible by virtue of his crimes involving moral turpitude. In its brief, DHS argues that the IJ correctly decided these issues and that a remand to the Board for consideration of this threshold question would be an exercise in futility. See Respondent's Brief, at 18 n.5. We agree. Here, the Board did not express any disagreement with the IJ's "crimes involving moral turpitude" analysis, and the Board certainly agreed that Idowu required a waiver of inadmissibility in order to adjust his status. In that circumstance, we may review the IJ's "crimes involving moral turpitude" analysis.

The IJ properly determined that eluding in the second degree under New Jersey law is a crime involving moral turpitude. The statute provides that: "Any person, while operating a motor vehicle on any street or highway in this State, … who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle … to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person." N.J. Stat. Ann. § 2C:29-2(b). Applying the categorical approach, eluding in the second degree is a crime involving moral turpitude because it requires knowingly evading police and in the process creating a risk of death or injury to another person. See Mei v. Ashcroft, 393 F.3d 737, 742 (7th Cir. 2004) ("person who deliberately flees at a high speed from an officer who, the fleer knows, wants him to stop, thus deliberately flouting lawful authority and endangering the officer, other drivers, passengers, and pedestrians, is deliberately engaged in seriously wrongful behavior" and has committed a crime involving moral turpitude). Contrary to Idowu's arguments, actual bodily injury is not required, and the IJ may look to the length of sentence to determine whether the "petty offense" exception applies, INA § 212(a)(2)(A)(ii), 8 U.S.C. § 1182(a)(2)(A)(ii), which it did not in his case.

Idowu does not challenge the IJ's determination that his conviction for aggravated assault-bodily injury in the third degree, in violation of N.J. Stat. Ann. § 2C:12-1(b)(7), is a crime involving moral turpitude, but it plainly is such a crime. "A person is guilty of aggravated assault if he … [a]ttempts to cause significant bodily injury to another or

7

causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." N.J. Stat. Ann. § 2C:12-1(b)(7). "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. N.J. Stat. Ann. § 2C:2-2(b)(3). The least culpable conduct necessary for a third-degree aggravated assault-serious bodily injury conviction involves a conscious disregard of a substantial and unjustifiable risk that significant bodily injury will follow. Thus, aggravated assault-bodily injury in the third degree is a crime involving moral turpitude.

Having been convicted of crimes involving moral turpitude, Idowu is inadmissible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and cannot adjust his status absent a waiver of inadmissibility. We turn then to the Board's decision not to waive Idowu's inadmissibility pursuant to INA § 212(h). The Board's determination that Idowu's conviction for second degree eluding under N.J. Stat. Ann. § 2C:29-2(b) is a violent or dangerous crime is consistent with 8 C.F.R. § 1212.7(d). The Attorney General adopted this regulation to guide the agency's exercise of discretion in deciding whether to consent to an inadmissible alien's request for admission. See Samuels v. Chertoff, 550 F.3d 252, 257 (2d Cir. 2008); Mejia v. Gonzales, 499 F.3d 991, 996 (9th Cir. 2007). The regulation distinguishes those who commit "violent or dangerous crimes" and requires them to make a heightened showing of an exceptional and extremely unusual hardship. "The heightened standard is rationally related to the

8

national immigration policy of not admitting aliens who could be a danger to society." Id. at 996.

Here, the Board did not contravene this policy or exceed its authority in determining that eluding in the second degree under New Jersey law fits the definition of a violent or dangerous crime. The agency determined that a "crime of violence" as defined at 18 U.S.C. § 16 would necessarily be a violent or dangerous crime for purposes of 8 C.F.R. § 1212.7(d). The term "crime of violence" means "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. Using section 16 as an analog, the agency determined that the second-degree eluding offense under New Jersey law was a felony, and that the state statute requires that the flight or attempt to elude create a risk of death or serious bodily injury to any person. N.J. Stat. Ann. § 2C:29-2(b). But, because there is no authority for the proposition that the agency must apply a categorical approach when analyzing whether a crime is violent or dangerous within the meaning of 8 C.F.R. § 1212.7(d), the agency also considered the particular nature of Idowu's offense. The IJ found, and the Board agreed, that Idowu's eluding offense arose out of a prolonged, high-speed police pursuit. Idowu narrowly missed other moving vehicles on the streets, rear-ended two vehicles stopped at a stop sign, and attempted to hit the police cars that were pursuing him. The Board determined that there

9

was danger inherent in the offense through the risk of death or injury, and the record does not compel a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B).

Consequently, the agency did not err in requiring Idowu to show an exceptional and extremely unusual hardship as a prerequisite to a section 212(h) waiver. On appeal to the Board, Idowu waived any challenge to the IJ's determination that he did not meet the "exceptional and extremely unusual hardship" standard. An alien must exhaust all administrative remedies as a prerequisite to raising a claim before this Court. See 8 U.S.C. § 1252(d)(1); Alleyne v. Immigration & Naturalization Serv., 879 F.2d 1177, 1182 (3d Cir. 1989). Failure to appeal at all available levels constitutes a failure to exhaust, thus depriving us of jurisdiction, see id. at 1252(d)(1) (all administrative remedies available "as of right" must be exhausted). Accordingly, we lack jurisdiction to consider Idowu's argument that he meets the standard.

Last, we reject as meritless Idowu's argument that his due process rights were violated.

For the foregoing reasons, we will deny the petition for review.